IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RACHEL THOMAS,** | : |
| | : Case No. 2:23-cv-02719 |
| **Plaintiff,** | : |
| | : **Judge Algenon L. Marbley** |
| v. | : |
| | : **Magistrate Judge Deavers** |
| **MORNING CHEF, LLC,** | : |
| | : |
| | : |
| **Defendant.** | : |

## **OPINION & ORDER**

This matter comes before the Court on Defendant Morning Chef, LLC's Motion for Judgment on the Pleadings (ECF No. 59) and the parties' joint Motion to Stay Notice to Putative Collective (ECF No. 66). For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Judgment on the Pleadings and **GRANTS** the parties' Motion to Stay.

### I.     BACKGROUND

On August 24, 2023, Plaintiff Rachel Thomas brought this Fair Labor Standards Act ("FLSA") action on behalf of herself and all others similarly situated against Defendant Morning Chef, LLC, the owner and operator of several "Another Broken Egg Cafe" restaurants in Ohio. (ECF No. 1 ¶¶ 11; *see* ECF No. 52 at 2). Ms. Thomas was hired by Morning Chef on or about July 6, 2022. (ECF No. 17 ¶ 14). Thomas alleges that during her employment with Morning Chef as a server and bartender, Morning Chef failed to pay her and others the "full" minimum wage when appropriate, even though Thomas and some of her coworkers regularly worked one to three hours performing non-tipped work after the restaurant would close at 2:00pm. (ECF No. 17 ¶¶ 12,

15–20, 26–34). This non-tipped work supposedly included "sweeping, mopping, re-rolling silverware and napkins; restocking items in the kitchen; restocking items in dining area; cleaning menus[,] tables, chairs [and] booths, cleaning the patio area; and restocking items in server areas." (ECF No. 17 ¶ 29; *see* ECF No. 62 at 2). Thomas argues that the amount of time she and others spent on this work was substantial, and thus Morning Chef failed to pay her and others properly, in violation of 29 C.F.R. § 531.56. (ECF No. 17 ¶¶ 18, 30–34). Thomas asserts violations of the FLSA, the Ohio Minimum Fair Wage Standards Act, and the Ohio Constitution. (ECF No. 17 at 1).

On August 23, 2024, just one year after the initial complaint was filed, the United States Court of Appeals for the Fifth Circuit issued its *Restaurant Law Center* opinion, which vacated the Department of Labor's December 2021 Final Rule (the "2021 Regulation") modifying 29 C.F.R. § 531.56. *See Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 167, 177 (5th Cir. 2024).

On November 12, 2024, Morning Chef filed its Motion for Judgment on the Pleadings, arguing that following the Fifth Circuit's decision in *Restaurant Law Center*, "29 C.F.R. § 531.56 has been vacated," and therefore, Thomas has no claim upon which relief may be granted and the First Amended Complaint should be dismissed with prejudice. (ECF No. 59 at 2–3). Thomas filed her Response on January 10, 2025, opposing Morning Chef's motion. (ECF No. 62). Though Morning Chef received an extension to file its Reply by February 21, 2025, that time has passed, and Morning Chef ultimately filed no Reply. (*See* ECF No. 69).

II.     **STANDARD OF REVIEW**

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed— but early enough not delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion attacks the sufficiency of the pleadings and is reviewed under the same standard as a motion to dismiss under

2

Rule 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F. 3d 509, 511–12 (6th Cir. 2001). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. LAW & ANALYSIS

Plaintiff Thomas's First Amended Complaint asserts violations of the federal Fair Labor Standards Act (Count I) and of the Ohio Minimum Fair Wage Standards Act and Ohio Constitution (Count II). (ECF No. 17 ¶¶ 46–59). In particular, Thomas invokes the 80/20 Rule and 30-Minute Rule under 29 C.F.R. § 531.56. (*Id.* at ¶¶ 31–34).

Defendant Morning Chef moves for judgment on the pleadings on the basis that Thomas fails to state a claim upon which relief can be granted. Morning Chef requests that this Court grant that judgment in light of the Fifth Circuit's vacatur of the 2021 Regulation in *Restaurant Law Center* and dismiss Thomas's First Amended Complaint in its entirety and with prejudice. (ECF No. 59 at 2–3, 13–14). Both Thomas and Morning Chef ask this Court to weigh in on the scope of the remedy in *Restaurant Law Center* and analyze vacatur or universal relief under the Administrative Procedure Act. (ECF No. 62 at 3–8; ECF No. 59 at 2, 6–14). This Court finds that such analysis would be unnecessary and thus declines the invitation to undertake it. The 2021 Regulation no longer exists. Pursuant to *Restaurant Law Center*, the Department of Labor has withdrawn it, effective December 17, 2024. *See* 89 Fed. Reg. 101884, 101885 (Dec. 17, 2024) (codified at 29 C.F.R. § 531.56). Therefore, the question is whether Thomas's First Amended Complaint still states a claim following this regulatory change.

3

Thomas's First Amended Complaint centers on alleged violations of the FLSA under the 80/20 Rule and the 30-Minute Rule, which are governed by 29 C.F.R. § 531.56.[1] (ECF No. 17 ¶¶ 31–32; *see id.* ¶¶ 33–40). Therefore, this Court will review the regulatory history of these rules before considering whether a claim under either is still viable post-*Restaurant Law Center*.

### A.  Regulatory Background

The Fair Labor Standards Act sets a federal minimum wage. Today, that minimum wage is $7.25 per hour, where it has remained for some time. Since 1966, the FLSA permits employers to satisfy part of their minimum wage obligation for "tipped employees" by taking a "tip credit" toward the minimum wage requirement, so that employers need to pay each tipped employee at least $2.13 per hour—and can claim a credit of up to $5.12 per hour—if the employee still earns at least the minimum wage when including tips. 89 Fed. Reg. 101884, 101885 (Dec. 17, 2024). The FLSA defines a "tipped employee" as an employee "engaged in an occupation" where they "customarily and regularly receive[] more than $30 a month in tips." *Id.* (citing 29 U.S.C. § 203(t)).

#### 1.  The 1967 Dual Jobs Regulation

The Department of Labor promulgated the Dual Jobs Regulation in 1967 to provide further clarification as to who would qualify as a tipped employee. The Department realized that a common issue arose when an employee spent some time performing tip-producing work, and other time on non-tipped tasks. *Id.*; *see Pender v. S. Flying Wings, Inc.*, 2025 WL 2522943, at *10 (S.D. Ohio Sept. 2, 2025) (Marbley, J.). Under the Dual Jobs Regulation, an employee performing two

---

[1] Ohio law incorporates the FLSA, so this Court can consider the FLSA and Ohio law in tandem. *Mickens v. Sweet Twist Frozen Yogurt, LLC*, 2021 WL 2069762, at *2 (S.D. Ohio May 24, 2021); *Thomas v. Speedway SuperAm., LLC*, 506 F.3d 496, 501 (6th Cir. 2007). The parties do not discuss Ohio law in their briefing regarding the instant Motion.

jobs—such as a hotel's maintenance man who also serves as a waiter—"is a tipped employee only with respect to his employment as a waiter," and "no tip credit can be taken for his hours of employment in his occupation [as a] maintenance man." 32 Fed. Reg. 13575, 13580–81 (Sept. 28, 1967) (codified at 29 C.F.R. § 531.56(e) (1967)).  Conversely, when a tipped employee performs "related duties," such as "a waitress who . . . clean[s] and set[s] tables, toast[s] bread, mak[es] coffee and occasionally wash[es] dishes or glasses," the Dual Jobs Regulation does not apply.  *Id.* at 13581.

### 2. *The 1988 Department of Labor 80/20 Guidance*

Over time, the Department of Labor issued guidance on the Dual Jobs Regulation, clarifying its application to employees who perform both tipped and non-tipped duties through both opinion letters and its 1988 Field Operations Handbook.  *Green v. Perry's Rests. Ltd.*, 758 F. Supp. 3d 1312, 1315 (D. Colo. 2024); 86 Fed. Reg. 60114, 60114 (Oct. 29, 2021).  The 1988 Handbook confirmed that the Dual Jobs Regulation "'permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips' . . . if those duties are 'incidental' and 'generally assigned' to tipped employees.  86 Fed. Reg. 60114, 60114, (Oct. 29, 2021) (quoting 1988 Department of Labor Handbook).  But the 1988 Handbook also stated that if specific employees were routinely assigned those related duties, or "tipped employees spend a substantial amount of time (in excess of 20 percent)" on those related duties, "no tip credit may be taken for the time spent in such duties." *Id.*  This Department of Labor guidance requiring that employers not take a tip credit for tipped employees who spend more than 20% of their time on related duties became known as the 80/20 Rule.

5

### 3. The 2009 and 2018 Department of Labor Opinion Letters

The Department of Labor's guidance on the 80/20 Rule existed "uninterrupted" from 1988 until January 2009, when a Department of Labor opinion letter "briefly rescinded the guidance," before that letter was withdrawn by the new administration of President Obama. *Rest. L. Ctr.*, 120 F.4th at 167; *see* 86 Fed. Reg. 60114, 60117 (Oct. 29, 2021). The 80/20 Rule continued uninterrupted until 2018, when the administration of President Trump reissued the 2009 opinion letter. *Rest. L. Ctr.*, 120 F.3th at 167.

In 2020, the Department of Labor issued a final rule that would amend 29 C.F.R. § 531.36(e) and permit employers to claim a tip credit for *all* non-tipped duties performed by tipped employees—if those duties were related to the tipped occupation and performed reasonably contemporaneously with the tipped duties. *Rest. L. Ctr.*, 120 F.3d at 167; 85 Fed. Reg. 86756, 86767 (Dec. 30, 2020) (to be codified at 29 C.F.R. § 531.56(e)). This amending rule never took effect, however, as the incoming Biden administration again changed Department of Labor policy. *Rest. L. Ctr.*, 120 F.3d at 167. Instead, the new administration issued a different final rule, "effectively codif[ying] [the Department of Labor's] longstanding 80/20 guidance" with a new subsection (f) to 29 C.F.R. § 531.36(f). *Id.* This resulted in the 2021 Regulation. *See* 86 Fed. Reg. 60114, 60115 (Oct. 29, 2021) (codified at 29 C.F.R. § 531.56(e)–(f) (2021)).

### 4. The 2021 Regulation

In this 2021 Regulation, the work of a tipped employee was defined in more detail, and categorized as (1) directly tip-producing; (2) directly-supporting; and (3) not part of the tipped occupation. 29 C.F.R. § 521.36(f) (2021). Employers were still permitted to take tip credit for tip-producing work, and could not claim tip credit for more than 20% of time spent on directly-supporting work. But the 2021 Regulation also created a new 30-Minute Rule, under which

6

employers also now could not take a tip credit for directly-supporting work performed in excess of 30 minutes at a time. This was a new requirement with no previous analogue in the 80/20 Rule. *Rest. L. Ctr.*, 120 F.4th at 168 n.1. The 2021 Regulation also removed the waitress counterexample that was in the 1967 Dual Jobs Regulation. *Id.* at 168; *compare* 29 C.F.R. § 521.36(e) (2021) *with id.* (1967).

### 5. The 2024 Restaurant Law Center Case

Shortly after the Biden administration's 2021 Regulation took place, it was challenged in Texas federal court. Although the district court determined (in part) that the 2021 Regulation was permissible under *Chevron* deference, the challengers appealed, and while the Fifth Circuit was considering the appeal, the Supreme Court overruled *Chevron*, instructing federal courts to "exercise their independent judgment in determining whether an agency has acted within its statutory authority, as the [Administrative Procedure Act] requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). Considering the appeal in light of *Loper Bright*, the Fifth Circuit determined that the 2021 Regulation was both arbitrary and capricious, as well as contrary to the text of the FLSA. *Rest. L. Ctr.*, 120 F.4th at 174–77. The Fifth Circuit then vacated the 2021 Regulation "insofar as it modifies 29 C.F.R. § 531.56 as promulgated in 1967." *Id.* at 177.

After *Restaurant Law Center*, the Department of Labor amended 29 C.F.R. § 531.56 on December 17, 2024, "to reinstate the regulatory text as it appeared prior to the effective date of the 2021 [Regulation]." 89 Fed. Reg. 101884, 101885 (Dec. 17, 2024). This is the applicable regulation that this Court must apply to the case *sub judice*. The viability of Thomas's claims depends in part on the state of the 80/20 Rule and 30-Minute Rule pre-2021.

7

### B. 80/20 Rule

First, because the 80/20 Rule predates *Restaurant Law Center*, the vacatur of the 2021 Regulation does not impact it. Thomas claims that Morning Chef took a tip credit for directly supporting work performed for a substantial amount of time, in excess of 20 percent of the workweek. (ECF No. 17 ¶¶ 19–20, 29–33). Morning Chef advances the argument that the Fifth Circuit's vacatur of the 2021 Regulation in *Restaurant Law Center* necessitates the dismissal of any theory of recovery under the 80/20 Rule. (ECF No. 59 at 13–14). This Court disagrees with Morning Chef and concludes that Thomas still could have a valid claim for relief under the 80/20 Rule.

Morning Chef has confused the extent of the Fifth Circuit's holding, incorrectly characterizing it as having vacated 29 C.F.R. § 531.56 in its entirety. (*Id.* at 14 ("Because 29 C.F.R. § 531.56 has been invalided, it no longer exists.")). That is not what the Fifth Circuit did. Rather, as this Court recently observed, the Fifth Circuit specifically concluded that the 2021 Regulation was arbitrary and capricious and contrary to the text of the FLSA, so the circuit court vacated the 2021 Regulation nationwide. *Pender*, 2025 WL 2522943, at *10–11 (citing *Rest. L. Ctr.*, 120 F.4th at 171). The Department of Labor then reinstated the regulatory text that existed prior to the 2021 Regulation. The Dual Jobs Regulation and 80/20 Rule predate the 2021 Regulation by decades.

Because the 80/20 Rule long predates the 2021 Regulation, it was not overturned by the Fifth Circuit's vacatur of the 2021 Regulation. *See Green*, 758 F. Supp. 3d at 1318–19; *Pender*, 2025 WL 2522943, at *11–12. Although the Supreme Court in *Loper Bright* did away with *Chevron* deference, the Supreme Court said nothing of *Auer* deference, and it specifically

8

reaffirmed *Skidmore* deference.[2] *Loper Bright*, 603 U.S. at 394 ("[C]ourts may . . . seek aid from the interpretations of those responsible for implementing particular statutes."); *see id.* at 476 (Kagan, J., dissenting) ("[W]hat is usually called *Skidmore* deference continues to apply."); *see also Kisor v. Wilkie*, 588 U.S. 558, 587 (2019) ("[*Auer*] [d]eference to reasonable agency interpretations of ambiguous rules pervades the whole corpus of administrative law."). Thus, the Fifth Circuit's evaluation of the 2021 Regulation following the Supreme Court's decision in *Loper Bright* does not necessarily imperil the 80/20 Rule.

Indeed, like many other district courts, this Court has recently found that the 1988 Department of Labor Guidance and the 80/20 Rule are still persuasive authorities, and it continues

---

[2] *Chevron*, *Skidmore*, and *Auer* all refer to legal doctrines on how courts approach agency interpretations of statutes and regulations:

Under *Chevron* deference, courts deferred to "permissible" agency interpretations of the statutes those agencies administer, even if the reviewing court would interpret the statute differently. *Loper Bright*, 603 U.S. at 377–78 (citing *Chevron U.S.A. Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984)). As noted, *Chevron* was overruled by *Loper Bright* in 2024. Now, the Supreme Court has instructed that courts "need not and under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous," but instead, should "exercise their independent judgment in determining whether an agency has acted within its statutory authority." *Id.* at 412–13.

Under *Skidmore* deference, courts are to respect agency interpretations "in formats such as opinion letters" "to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "[A]n agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead Corp.*, 533 U.S. 218, 234–35 (2001) (quoting *Skidmore*, 323 U.S. at 139).

Under *Auer* deference, courts "defer[] to agencies' reasonable readings of genuinely ambiguous regulations." *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019) (citing *Auer v. Robbins*, 519 U.S. 452 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)). This deference recognizes that "Congress routinely delegates to agencies the power to implement statutes by issuing rules," and that because "regulations will sometimes contain ambiguities," there is a rebuttable presumption that agencies have the power to interpret their own regulations. *Id.* at 569–70.

9

to do so in this case. *Pender*, 2025 WL 2522943, at *11–12; *accord Harding v. Steak N Shake, Inc.*, 745 F. Supp. 3d 571, 583–85, 587 (N.D. Ohio 2024) (*Skidmore* deference); *Green*, 758 F. Supp. 3d at 1321–22 (*Auer* and *Skidmore* deference); *see also Haase v. Cameron Mitchell Rests., LLC*, 2024 WL 23159, at *5–7 (S.D. Ohio Jan. 2, 2024) (*Auer* deference). This determination under *Skidmore* aligns with the Sixth Circuit's consistent view that the Department of Labor Handbook is "persuasive" because it has been "the longstanding position of the [Department]." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531–33 (6th Cir. 2017); *see Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999) (Department of Labor Handbook and Opinion Letters "provide[] some persuasive authority," particularly when they concern something the Department has "long construed.").

Thomas still has a case under the 80/20 Rule, as she has alleged that she performed a significant amount of work on duties related to her tipped occupation, and that such work was, at least "in some instances, . . . 20 percent or more of [her] total hours worked." (ECF No. 17 ¶¶ 19–20, 29–30, 33). Taking these allegations as true, Morning Chef is not entitled to judgment on the counts for violations of the FLSA, the Ohio Minimum Fair Wage Standards Act, or the Ohio Constitution, insofar as they rest on violations of the 80/20 Rule.

### C. 30-Minute Rule

The *Skidmore* analysis applicable to the 80/20 Rule does not hold for the 30-Minute Rule. Thomas next claims that Morning Chef took a tip credit for directly supporting work performed for a substantial amount of time, in excess of 30 minutes at a time. (ECF No. 17 ¶¶ 19–20, 29–33). Again, as a threshold matter, the question is whether this rule also survived the Fifth Circuit's decision in *Restaurant Law Center*. Unlike the 80/20 Rule, this Court concludes that the 30-Minute Rule cannot survive post-*Restaurant Law Center*.

Thomas advances the general argument that this Court need not apply the Fifth Circuit's reasoning in *Restaurant Law Center*, essentially because it is not binding authority on this Court. (ECF No. 62 at 1, 3–4). Meanwhile, Morning Chef argues that, like the 80/20 Rule, the 30-Minute Rule also should be vacated as invalidated in light of *Restaurant Law Center*. (ECF No. 59 at 13–14). Morning Chef points out that "the 30-minute requirement was new to the [2021 Regulation] and has no analog in the [Department of Labor]'s previous 80/20 guidance." (ECF No. 59 at 5 (citing *Rest. L. Ctr.*, 140 F.4th at 168 n.1)).

Here, Morning Chef is essentially correct. As this Court has already observed, after Morning Chef filed its Motion for Judgment on the Pleadings on November 12, 2024, (ECF No. 59), the Department of Labor withdrew the 2021 Regulation, effective December 17, 2024, and clarified that it was "reinstat[ing] the regulatory text as it appeared prior to the effective date of the 2021 [Regulation]" in light of the Fifth Circuit's mandate in *Restaurant Law Center*. 89 Fed. Reg. 101884, 101885 (Dec. 17, 2024); *accord Jones v. Buttermilk Ranch, LLC*, 2025 WL 83881, at *2 (M.D. Tenn. Jan. 13, 2025). Though Thomas filed her Response opposing the Motion on January 10, 2025, she did not address the fact that the Department of Labor had withdrawn the 30-Minute Rule. Instead, she characterized the Fifth Circuit's ruling on this matter as a "non-binding decision" and asked this Court to uphold the Department of Labor's already-rescinded 30-Minute Rule limitation on the tip credit. (ECF No. 62 at 2). As previously noted, Morning Chef filed no Reply. Thus, the briefing in this case does not neatly address how *Restaurant Law Center* and the withdrawal of the 2021 Regulation impact the 30-Minute Rule differently from the 80/20 Rule. But *Restaurant Law Center* and the 2021 Regulation withdrawal are fatal to Thomas's 30-Minute Rule claim, as there is no longer any such 30-Minute Rule violation.

11

Though at least one court in this circuit has still applied the 30-Minute Rule post-*Restaurant Law Center*, it appears to have done so based on legal briefing completed prior to the formal amendment of the 2021 Regulation. *See Neuhoff v. Hosp. Goals LLC*, 24-cv-324, 2025 WL 918811, at *3 (N.D. Ohio Mar. 26, 2025) (citing 29 C.F.R. § 531.56(f)(5) for the 30-Minute Rule).³ Other courts have, for various reasons, declined to consider the applicability of 29 C.F.R. § 531.56(f) post-*Restaurant Law Center*. *See, e.g., Jones*, 2025 WL 83881, at *2 n.1 (declining to "decide the applicability of the regulation" on a motion seeking court-authorized notice of an FLSA suit to other employees); *Popp v. Brewdog Brewing Co.*, 2025 WL 345980, at *4–5 (S.D. Ohio Jan. 30, 2025) (declining to "opine on the effect *Restaurant Law Center*" absent briefing by the parties on the issue).

Because the Fifth Circuit vacated the 2021 Regulation and the Department of Labor restored the regulatory text as it was prior to the 2021 Regulation, the law returned "to the pre-rulemaking status quo." *Hallman v. Flagship Rest. Grp., LLC*, 762 F. Supp. 3d 830, 842 (D. Neb. 2025); *see Rest. L. Ctr.*, 120 F.4th at 177. There was no 30-Minute Rule analogue prior to the 2021 Regulation; thus, Thomas can no longer prove a set of facts that would support her claim and entitle her to relief under the 30-Minute Rule. *See Ziegler*, 249 F.3d at 512.

Accordingly, no legal remedy is available to Thomas under the now-defunct 30-Minute Rule. (*See* ECF No. 17 ¶ 32). Morning Chef's Motion is granted insofar as Thomas cannot claim a remedy under the defunct 30-Minute Rule.

---

³ In *Neuhoff*, the Plaintiffs' opening brief supporting its motion for summary judgment was filed on December 5, 2024, 12 days before the regulation was amended on December 17, 2024, and cited to 29 C.F.R. § 531.56(f)(4) for the proposition that "support of tip-producing work performed by a tipped employee cannot exceed 30 minutes for any continuous amount of time." (*Neuhoff*, ECF No. 15 at 6). Defendant's letter in opposition levied only factual allegations and cited no legal authorities whatsoever. (*Id.*, ECF No. 19).

## IV. CONCLUSION

For the reasons set forth above, Defendant Morning Chef's Motion for Judgment on the Pleadings (ECF No. 59) is **GRANTED IN PART** and **DENIED IN PART** as follows: the Motion is **GRANTED** as to any violation Plaintiff Thomas claims solely pursuant to 29 C.F.R. § 531.56 as was effective from December 28, 2021 to December 16, 2024; the Motion is otherwise **DENIED**.

The parties also filed a Joint Motion to Stay Notice to Putative Collective (ECF No. 66), requesting that notice to the putative collective be stayed until the resolution of this Motion for Judgment on the Pleadings. For good cause shown, this Court finds that a stay of notice pending this instant Motion was appropriate, and therefore this stay is **GRANTED**. In light of this Court's resolution of the Motion, Plaintiff's counsel shall now "mail, e-mail, and text the Notice and Consent to the individuals on the FLSA Class List." (ECF No. 47 ¶ 6; *see* ECF No. 52 at 7).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 24, 2025**